1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

CHRYSTAL REYES MENDIOLA,

8

Plaintiff,

No.  1:16-CV-03026-RHW

9

v.

10

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

11

12

Defendant.

13

Before the Court are the parties' cross-motions for summary judgment, ECF

14

Nos. 13 & 14. Ms. Mendiola brings this action seeking judicial review, pursuant to

15

42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his

16

application for Supplemental Security Income under Title XVI of the Social

17

Security Act, 42 U.S.C §§ 1381-1383F. After reviewing the administrative record

18

and briefs filed by the parties, the Court is now fully informed. For the reasons set

19

forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

20

**DENIES** Ms. Mendiola's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

## I.    Jurisdiction

Ms. Mendiola protectively filed for Supplemental Security Income on May 16, 2013. AR 185. Her alleged onset date is July 1, 2012. AR 170. Ms. Mendiola's application was initially denied on August 6, 2013, AR 92-104, and on reconsideration on September 12, 2013, AR 108-119.

A hearing with Administrative Law Judge ("ALJ") Glenn G. Meyers occurred on July 3, 2014. AR 38-61. On August 18, 2014, the ALJ issued a decision finding Ms. Mendiola ineligible for disability benefits. AR 20-37. The Appeals Council denied Ms. Mendiola's request for review on December 23, 2015, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Mendiola timely filed the present action challenging the denial of benefits on February 24, 2016. ECF No. 3. Accordingly, Ms. Mendiola's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 &

416.908-09.  If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

1    national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

2    676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

4        A district court's review of a final decision of the Commissioner is governed

5    by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

6    Commissioner's decision will be disturbed "only if it is not supported by

7    substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

8    1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

9    a mere scintilla but less than a preponderance; it is such relevant evidence as a

10   reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

11   *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

12   1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

13   whether the Commissioner's findings are supported by substantial evidence, "a

14   reviewing court must consider the entire record as a whole and may not affirm

15   simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

16   *Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

17   F.2d 498, 501 (9th Cir. 1989)).

18       In reviewing a denial of benefits, a district court may not substitute its

19   judgment for that of the ALJ.  *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

20   1992).  If the evidence in the record "is susceptible to more than one rational

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1  interpretation, [the court] must uphold the ALJ's findings if they are supported by

2  inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

3  1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

4  2002) (if the "evidence is susceptible to more than one rational interpretation, one

5  of which supports the ALJ's decision, the conclusion must be upheld").  Moreover,

6  a district court "may not reverse an ALJ's decision on account of an error that is

7  harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is

8  inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

9  The burden of showing that an error is harmful generally falls upon the party

10 appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

11                          **IV.    Statement of Facts**

12         The facts of the case are set forth in detail in the transcript of proceedings,

13 and only briefly summarized here.  Ms. Mendiola was 41 years old at the alleged

14 date of onset. AR 31, 170. She has a marginal education, leaving school in the 8th

15 grade, and is able to communicate in English. AR 31, 336. The ALJ found Ms.

16 Mendiola to suffer from severe impairments of a history of foot pain, obesity,

17 depressive disorder, and personality disorder. AR 25. Ms. Mendiola has also had

18 one-time diagnoses of post-traumatic stress disorder and bipolar disorder. AR 26.

19

20

Ms. Mendiola previously worked as a cannery worker, cashier farm worker, agricultural produce sorter, agricultural produce packer, and nurse assistant. AR 58, 199, 210.

## V.    The ALJ's Findings

The ALJ determined that Ms. Mendiola was not under a disability within the meaning of the Act from May 16, 2013, the date the application was protectively filed. AR 23, 32.

**At step one**, the ALJ found that Ms. Mendiola had not engaged in substantial gainful activity since May 16, 2013 (citing 20 C.F.R. § 416.971 *et seq*.). AR 25.

**At step two**, the ALJ found Ms. Mendiola had the following severe impairments: history of foot pain, obesity, depressive disorder, and personality disorder (citing 20 C.F.R. § 416.920(c)). AR 25-26.

At **step three**, the ALJ found that Ms. Mendiola did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 26-28.

At **step four**, the ALJ found Ms. Mendiola had the residual functional capacity ("RFC") to sedentary work as defined in 20 CFR 416.967(b) with these additional limitations: (1) she can perform unskilled, repetitive, routine work; (2) she should have no contact with the public and occasional contact with supervisors

1   and co-workers; and (3) she would be off task five percent of the time at work

2   while still meeting the minimum production requirements of the job. AR 28-31.

3      The ALJ determined that Ms. Mendiola is unable to perform her past

4   relevant work. AR 31.

5      At **step five**, the ALJ found that in light of her age, education, work

6   experience, and residual functional capacity, in conjunction with the Medical-

7   Vocational Guidelines and testimony from the vocational expert, there are jobs that

8   exist in significant number in the economy that she can perform. AR 31-32.

## VI.    Issues for Review

10     Ms. Mendiola argues that the Commissioner's decision is not free of legal

11  error and not supported by substantial evidence. Specifically, she argues the ALJ

12  erred by: (1) improperly rejecting severe impairments at step two and in failing to

13  address limitations from these purportedly severe impairments; (2) improperly

14  finding Ms. Mendiola's testimony was not credible; and (3) improperly weighing

15  the medical and opinion evidence of Dr. Burdge and Dr. Crank.

## VII.   Discussion

16

17  **A. The ALJ Did Not Err in His Analysis of Ms. Mendiola's Impairments.**

18     At step two in the five-step sequential evaluation for Social Security cases,

19  the ALJ must determine whether a claimant has a medically severe impairment or

20  combination of impairments. *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988)

1   (quoting SSR 85-28). An impairment is found to be not severe "when medical

2   evidence establishes only a slight abnormality or a combination of slight

3   abnormalities which would have no more than a minimal effect on an individual's

4   ability to work." *Id*. Step two is generally "a de minimis screening device [used] to

5   dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a

6   medically severe impairment only when the conclusion is clearly established by the

7   record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v.

8   Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)). In other words, an impairment will

9   only be found severe if it "significantly limits [a claimant's] physical or mental

10  ability to do basic work activities." 20 C.F.R. § 416.920(c).

11      An impairment or combination of impairments must have lasted for at least

12  twelve continuous months. 20 C.F.R. §§ 416.905, 416.912, *Edlund v. Massanari*,

13  253 F.3d 1152, 1159-60 (9th Cir. 2001). Importantly, the alleged impairment must

14  result from anatomical, physiological, or psychological abnormalities shown by

15  medically acceptable clinical and laboratory diagnostic techniques and not only by

16  Plaintiff's statements regarding her symptoms. 20 C.F.R. § 416.908; *Ukolov v.

17  Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

18      The ALJ found Ms. Mendiola's complaints of hand pain and numbness to be

19  non-severe, and he found no evidence of significant limitations stemming from

20  these conditions. AR 25-26. Dr. Jeremiah Crank, M.D., opined that Ms.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

1    Mendiola's complaints of hand pain and numbness were "likely carpal tunnel

2    syndrome," and advised her to use NSAIDS and wear a wrist brace at night. AR

3    25, 363. As will be discussed below, the ALJ appropriately rejected Ms.

4    Mendiola's subjective information and complaints as not credible. AR 28-30.

5    Additionally, the record demonstrates that Dr. Crank's April 2013 examination

6    found Ms. Mendiola to have a full range of motion in her wrists, thumbs, elbow,

7    and shoulder. AR 329-30. Not only is Ms. Mendiola's impairment not severe under

8    step two, as it does not significantly limit her ability to perform work activities, the

9    ALJ considered all symptoms and assigned Ms. Mendiola the RFC to perform only

10   sedentary work pursuant to 20 C.F.R. § 416.967(a), which includes limitations on

11   lifting and carrying.

12        Ms. Mendiola reported that she had cramps in her legs, a complaint the ALJ

13   also found to not have more than a minimal effect on her ability to perform basic

14   work activities, thus is not a severe impairment. AR 26. The record does not

15   indicate that the reported leg cramps are a medically diagnosed impairment.

16   However, there are multiple complaints of leg cramping. AR 280, 286, 419.

17   Importantly, Ms. Mendiola's leg cramps stopped after she started taking vitamin B

18   complex, as she reported in September 2012, resolving these symptoms. AR 26,

19   286. She again reported the leg cramps in February 2014, when Dr. Frank Garner,

20   M.D., noted that she is supposed to be taking B complex, which she was not

currently taking, and had previously resolved her symptoms,. *See* 20 C.F.R. § 416.930 (prescribed treatment must be followed, if not a claimant will not be found disabled). Additionally, Ms. Mendiola's subjective complaints were rejected by the ALJ as not credible. AR 28-30. The ALJ found Ms. Mendiola's leg cramps not to be severe under step two. AR 29. In assessing her RFC, the ALJ, considering all of her symptoms and the effects of her obesity, determined Ms. Mendiola could perform only sedentary work, as defined in 20 C.F.R. § 416.967(a).

The ALJ found Ms. Mendiola's mental impairments, of PTSD and bipolar disorder, as diagnosed once in February 2014, to be non-severe. AR 26, 421. The ALJ noted that these one-time diagnoses were made after a single evaluation, the focus of Ms. Mendiola's mental health treatment has been for her depressive disorder, the record does not show longitudinal history of these impairments, and there is no evidence to suggest these impairments have lasted for a continuous twelve-month period. AR 26. Importantly, a diagnosis itself does not equate to a finding of severity. *Edlund*, 253 F.3d at 1159-60 (Plaintiff has the burden of proving this impairment or their symptoms affect her ability to perform basic work activities); *See Gentle v. Barnhart*, 430 F.3d 865, 869 (7th Cir. 2005) ("Conditions must not be confused with disabilities. … A person can be depressed, anxious, and obese yet still perform full-time work"); *see also Mcleod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Not only did the ALJ reject Ms. Mendiola's subjective

information as not credible, AR 28-30, Ms. Mendiola's statements alone cannot

establish the severity of any impairment. 20 C.F.R. § 416.908; *Ukolov*, 420 F.3d at

1005. The ALJ, after considering the entire record, and all of the symptoms,

assigned a RFC of only sedentary work, with the additional limitations of

unskilled, repetitive, routine work, and Ms. Mendiola should have no contact with

the public and only occasional contact with supervisors and co-workers. AR 28-31.

Because Ms. Mendiola was found to have at least one severe impairment,

this case was not resolved at step two. If there was any error in the ALJ's finding at

step two, it is harmless if all impairments, severe and non-severe, were considered

in the determination Ms. Mendiola's residual functional capacity. *See Lewis v.*

*Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that a failure to consider an

impairment in step two is harmless error where the ALJ includes the limitations of

that impairment in the determination of the residual functional capacity). Because

the ALJ's determination that Ms. Mendiola's hand pain and numbness, leg cramps,

PTSD, and bipolar disorder are not severe impairments at step two is supported by

substantial evidence and free from legal error, and the ALJ accounted for all of

these impairments in step four, the Court finds the ALJ did not err.

**B. The ALJ properly discounted Ms. Mendiola's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533

F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of the symptoms alleged.  *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence

suggesting malingering, "the ALJ can reject the claimant's testimony about the

severity of [his] symptoms only by offering specific, clear, and convincing reasons

for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors,

including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When

evidence reasonably supports either confirming or reversing the ALJ's decision, the

Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir.1999).

### a.  Ms. Mendiola's daily activities.

The ALJ stated that Ms. Mendiola's activities of daily living do not support

a finding of disability, both with regard to her mental and physical impairments.

AR 29. The ALJ noted several activities of daily living that are inconsistent with

Ms. Mendiola's allegations of the level of her impairments. *Id*. In particular, the ALJ noted: Ms. Mendiola reported that she planned to join a gym and walk on a treadmill; she was walking at the Greenway; she has no problem with personal care; she stated she was sleeping well and not as irritable; she had recently been able to deep clean her home; she is able to prepare simple meals and do household chores; she can use public transportation and drive, even though she reported not having a driver's license; she is able to shop for food and clothing; she attends barbeques with others and visits her children two to three times per week; she was watching her granddaughter daily; and while she reported that she stayed in bed most days, she told her therapists she is getting up and staying up all day. AR 29-30. These activities are inconsistent with someone that alleges disabling mental impairments and disabling physical pain.

The Court does not find the ALJ erred when assessing Ms. Mendiola's credibility because her activities of daily living are inconsistent with her alleged physical and mental impairments.

b. **Inconsistency with the record.**

The ALJ asserted that the clinical findings do not support the degree of limitation Ms. Mendiola has alleged. AR 28. For example, the x-rays of Ms. Mendiola's feet showed only minimal arthritis, nerve conduction results were normal, she had a full range of motion and strength in her feet and ankles, her

1   sensation was normal, and her gait and station were steady. AR 29. Ms. Mendiola

2   reported her foot pain improved with medication, and she had few limitations. *Id*.

3        With regard to Ms. Mendiola's mental health treatment, it appears to have

4   largely been successful and inconsistent with the allegations of disability. The ALJ

5   noted that Ms. Mendiola's symptoms were improving, she reported medications

6   working very well, that she felt much better, she was able to see and enjoy

7   spending time with her children and grandchildren, and she was much more active.

8   *Id*. Ms. Mendiola asserts that she suffers from disabling memory loss, but her

9   memory and concentration were within normal limits according to her mental

10  status exam, and her thought processes were logical. *Id*.

11       Thus, the Court does not find the ALJ erred when assessing Ms. Mendiola's

12  credibility because her reported disabling physical and mental impairments are

13  inconsistent with the record as a whole.

14       **c.  Failure to treat.**

15       Also in consideration of Ms. Mendiola's credibility, the ALJ noted, as

16  previously discussed, that her allegations of disabling PTSD and bipolar disorder

17  are inconsistent with the focus of Ms. Mendiola's mental health treatment for only

18  her depressive disorder. AR 26. Additionally, the record demonstrates that Ms.

19  Mendiola's issues with leg cramps were resolved when she was taking her B

20

1  complex as directed in 2012, but the leg cramps returned 2014 when she was no

2  longer taking the B complex as she was supposed to. AR 286, 419.

3       Finally, the ALJ noted Ms. Mendiola's work history shows she only worked

4  sporadically prior to the alleged onset date, that she only earned at a substantial

5  gainful actively level one year since 2000, raising credibility concerns about Ms.

6  Mendiola's motivation to seek and maintain employment and raises the question of

7  whether her continued unemployment is due to medical impairments. AR 30; *see*

8  *also Tommasetti*, 533 F.3d at 1040 (an extremely poor work history and a showing

9  of little propensity to work in a claimant's lifetime was a specific, clear, and

10 convincing reason to discredit a claimed inability to work).

11      Thus the ALJ was permitted to use this lack of treatment and Ms.

12 Mendiola's poor work history in an adverse credibility determination. *Molina*, 674

13 F.3d at 1114; *Tommasetti*, 533 F.3d at 1040.

14 **C. The ALJ Properly Weighed the Medical Evidence.**

15   **1.  Legal Standard.**

16      The Ninth Circuit has distinguished between three classes of medical

17 providers in defining the weight to be given to their opinions: (1) treating

18 providers, those who actually treat the claimant; (2) examining providers, those

19 who examine but do not treat the claimant; and (3) non-examining providers, those

20

who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Additionally, the ALJ is the "final arbiter" with regard to medical evidence ambiguities, including differing physicians' opinions. *Tommaetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

1      **2.  Aaron Burdge, Ph.D.**

2          Dr. Burdge was an examining doctor that completed a psychological

3      evaluation for the Washington State Department of Social and Health Services in

4      April 2013. AR 336-54. Dr. Burdge assessed marked limitations in Ms. Mendiola's

5      ability to perform activities within a schedule, maintain regular attendance, and be

6      punctual. AR 30, 338. Dr. Burdge also opined that Ms. Mendiola would have

7      marked limitations in her ability to complete a normal work day/week and in

8      maintaining appropriate behavior in a work setting. AR 31, 339. Dr. Burdge's

9      opinion is contradicted by the opinion of non-examining doctors, Dr. John

10     Robinson, Ph.D. in August 2013, and Dr. Cynthia Collingwood, Ph.D. in

11     September 2013. AR 72, 86.

12         While the ALJ did not completely discount Dr. Burdge's opinion, it was

13     afforded little weight. AR 31. The ALJ reasoned that Dr. Burdge's findings were

14     not supported by evidence in the record to suggest the degree of limitation Dr.

15     Burdge found. AR 29, 31, 360, 454, 480, 509. Additionally, the ALJ noted that Ms.

16     Mendiola's symptoms improved with medications. *Id*. For example, the ALJ noted

17     that in April 2014, Plaintiff reported her medication regimen was working "very

18     well" for her and that she felt "much better" and was "in better control." AR 29,

19     453, 457; *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

20     1006 (9th Cir. 2006) (impairments that can be controlled with treatment cannot

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

1   support disability). Additionally, the ALJ noted Ms. Mendiola's activities of daily

2   living are inconsistent with the degree of limitation found by Dr. Burdge. AR 31.

3       The opinion of Dr. Burdge is contradicted by two later non-examining

4   doctors and, in assigning little weight to Dr. Burdge's opinion, the ALJ supported

5   the determination with specific and legitimate evidence supported by the record.

6   Thus, the ALJ did not err in his consideration of Dr. Burdge's opinion or in

7   assigning the opinion little weight.

8       **3. Dr. Jeremiah Crank, M.D.**

9       Dr. Crank was a treating doctor that completed a physical evaluation in April

10  2013 for the Washington State Department of Social and Health Services. AR 30.

11  The ALJ gave little to no weight to Dr. Crank's opinion. *Id*. Dr. Crank opined that

12  Ms. Mendiola was severely limited and unable to perform even sedentary work.

13  AR 30, 326-35. Dr. Crank's opinion is contradicted by the opinion of non-

14  examining doctor, Dr. Norman Staley, M.D. in September 2013. AR 83-85.

15  Contrary to Dr. Crank's opinion that Ms. Mendiola cannot perform even sedentary

16  work, Dr. Staley opines that she can lift 20 pounds occasionally and 10 pounds

17  frequently, and she can stand or walk about two hours and sit for six hours in an

18  eight hour workday.

19      The ALJ afforded the opinion of Dr. Crank little to no weight. AR 30. The

20  ALJ noted that Dr. Crank gave his opinion in April 2013, before Ms. Mendiola had

1   visited podiatry, which revealed normal nerve conduction studies, full range of

2   motion and strength in her feet and ankles, with normal sensation testing, and

3   normal and steady gait. AR 29, 30, 286, 365, 382, 420, 493. Based on this more

4   recent evidence, the ALJ determined that Ms. Mendiola is capable of performing

5   sedentary work. AR 30; *see generally Osenbrock v. Apfel*, 240 F.3d 1157, 1165

6   (9th Cir. 2000) (the more recent medical records are "highly probative"). In

7   addition, an ALJ may reject a physician's opinion, which is "brief and conclusory

8   in form with little in the way of clinical findings to support [its] conclusion."

9   *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986). The ALJ also noted Ms.

10  Mendiola's activities exceeded Dr. Crank's limitations, included caring for her

11  granddaughter on a daily basis, walking regularly, doing household chores, and

12  being able to deep clean her home. AR 29, 30, 224, 227 504

13          Dr. Crank's opinion is contradicted by the opinion of Dr. Staley, as well as

14  subsequent medical evidence. The ALJ provided specific and legitimate evidence

15  supported by the record in assigning little to no weight to the opinion of Dr. Crank.

16  As such, the ALJ did not err in his consideration of Dr. Crank's opinion or in

17  assigning the opinion little to no weight.

18

19

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**

# VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

3.  **Judgment shall be entered in favor of Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 14th day of November, 2016.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**